No. 8077.

JOHNSON ET AL. *v.* PLUME.

HUSBAND AND WIFE.—*Surviving Wife's Interest in Real Estate.*—*Conveyance.*—A surviving wife is not entitled to an interest in lands held by the husband during the marriage, and in the conveyance of which she did not join, if his seizin was merely instantaneous.

SAME.—*Mortgage.*—*Seizin.*—A. owned land, and desiring B. to obtain for him a loan of $500 from the Sinking Fund, for such purpose, conveyed the land to B., who executed a mortgage for such sum to said fund, and on the same day, without his wife joining him, reconveyed the land to A. After B.'s death his wife claimed one-third in fee of said land.

*Held,* that B.'s seizin was instantaneous, and that his wife was not entitled to any interest in said land.

From the Greene Circuit Court.

*J. D. Alexander, H. W. Letsinger, A. G. Cavins* and *E. H. C. Cavins,* for appellants.

*W. I. Baker, L. Shaw, W. C. Andrews* and *J. S. Bays,* for appellee.

BEST, C.—This action was brought by the appellee against the appellants for the partition of certain lands described in the complaint. Issues were formed, submitted to the court for trial, with the request by appellants that the court find the facts specifically and state its conclusions of law thereon. This was done. The facts found are substantially these:

"1st. That prior to August 27th, 1855, one James Gallately" owned the land in the complaint described.

"2d. That said Gallately wanted to borrow funds from the State sinking fund, but because of being already a borrower from said fund to the extent of the limit allowed by law, or some other obstacle, he could not, in his own name, secure the loan; that he made a parol arrangement or agreement with James C. Plume, by which he was to convey said land to said Plume, and said Plume was then to execute a mortgage on said land for five hundred dollars to the State of Indiana, comply with all the formalities and make all affidavits necessary to borrow five hundred dollars of said funds, obtain said sum of money thereby, and give it to said Gallately, and then reconvey said land to said Gallately, and said Gallately was then to assume and pay said mortgage.

"3d. That, in pursuance of said parol agreement, said Gallately executed and delivered to said James C. Plume"

an ordinary warranty deed for said premises, and that said Plume then executed to the State of Indiana a mortgage in the statutory form for five hundred dollars; that said Plume "in consideration therewith, and on the same day," made an affidavit that he was the owner of said land, and that there was no encumbrance upon or better claim to said land, of which he had knowledge, stating particularly the source of his title; "that at the time said deed and mortgage were executed said land was of the reasonable value of four thousand dollars, and that the said James C. Plume at the same time executed his bond in the sum of five hundred dollars as recited in said mortgage, obtained said money and gave the same to said Gallately; that said James C. Plume then executed and delivered to the said Gallately" a quit-claim deed for said land; that said deeds and mortgage were acknowledged before the same person and bear the same date.

"4th. That, during the time intervening the execution of the two deeds aforesaid, no virtual change of possession of said land occurred, but the same remained in the virtual possession of said Gallately.

"5th. That said deeds and mortgage were all delivered on the same day, and were all filed for record in the office of the recorder of said county at 12 o'clock noon of said day.

"6th. And, at the time of the execution of said deeds and mortgage, the plaintiff, Maria Plume, was the lawful wife of said James C. Plume, and that plaintiff did not join with her said husband in the execution of the deed to Gallately aforesaid, and said Plume departed this life in September, 1875, leaving his said wife, the plaintiff herein, him surviving.

"7th. That said mortgage was discharged and satisfied by said Gallately.

" 8th. That after the execution of said last deed from Plume to Gallately, said Gallately conveyed all his interest in said land, described in the complaint, to one William Todd, and said defendant Matilda A. Johnson is now the owner of the interest of said Todd in all that part of said land lying south of a line running east from a point on the west line of said tract, 178 rods south of the north line of said section 6, in township 8 north, range 4 west; and also of a strip 21 feet wide on the west side of the remaining portion thereof.

" 9th. That the improvements made by the defendant Matilda A., on said land since September, 1875, are of value equal to the rents thereof during said period, and that said defendant has been in the exclusive possession of said land during said time."

Upon these facts the following conclusions of law were stated, viz. :

" 1st. That the parol arrangement or agreement made by said Gallately with said James C. Plume, in regard to said land, was an attempt to create an express trust by parol, and was void, by reason of not being executed in writing.

" 2d. That the deed from James Gallately to James C. Plume, aforesaid, conveyed to and vested in said Plume the title to said land in fee simple.

" 3d. That, as an incident of said title in fee simple in said James C. Plume, the plaintiff acquired an inchoate interest in said land by virtue of her marital relation as wife of said James C. Plume.

"4th. That the execution of the deed from said James C. Plume to said Gallately, for the land therein described, did not divest or bar the inchoate interest of the plaintiff in the land described in the complaint, and said interest remained in abeyance until the death of her said husband in 1875; upon which event, she became the owner in fee simple of the undivided one-third of said land described in the complaint.

"5th. That said plaintiff ought to have partition of said land as described in the complaint, as against said defendants Matilda A. and Levi S. Johnson, and to have her one-third interest therein set off to her in severalty."

The appellants excepted to these conclusions of law, and final judgment was rendered against them. From this judgment they appeal, and insist that the court erred in its conclusions of law.

Our statute provides that "A surviving wife is entitled, except as in section 17 excepted, to one-third of all the real estate of which her husband may have been seized in fee simple, at any time during the marriage, and in the conveyance of which she may not have joined, in due form of law ; and also of all lands in which her husband had an equitable interest at the time of his death : *Provided*, That if the husband shall have left a will, the wife may elect to take under the will instead of this or the foregoing provisions of this act."

This law was in force at the time these conveyances were made, and under it the appellee claims one-third of the land. It is not found by the court that James C. Plume left a will, and we will therefore presume that he died intestate. By the terms of this statute a surviving wife is entitled to one-third of all the real estate of which the husband was seized at any time during the marriage, and in the conveyance of which she did not join. The appellee's husband was seized of the land in dispute, and as she did not join him in the conveyance made to James Gallately, she is within the letter of the statute ; and, if the statute is to be literally construed, her claim must prevail. At the common law a widow was entitled to dower in all lands of which her husband was seized at any time during coverture, and in the conveyance of which she did not join. This was the law in this State before the present statute was enacted. Since its enactment she is entitled to a third in fee. The statute merely enlarges her rights, by substituting a third in fee for a dow-

er interest, but does not otherwise change them ; therefore, she can not claim a third in fee in any lands in which she could not have claimed dower before the adoption of the statute. At the common law she could not claim dower in lands held by her husband, as trustee, nor in such as he had held by an instantaneous seizin. These rules apply under the statute, and, if the appellee's husband's seizin was instantaneous, or that of a trustee, she can not recover. Was it instantaneous?

Washburn on Real Property, vol. 1, p. 176, sec. 9, says : "But if the seisin of the husband be merely instantaneous, intended as a means of accomplishing some ulterior purpose in regard to the estate, the husband being, as it were, a conduit through which the estate passes without an intent to clothe him with a beneficial interest, it would not give his wife any right of dower. * * In respect, therefore, to an instantaneous seisin, whether it shall be sufficient to confer the right of dower depends upon the character rather than the duration of the seisin."

In 4 Kent Com., p. 38, it is said : "A transitory seisin for an instant, when the same act that gives the estate to the husband conveys it out of him, as in the case of a conusee of a fine, is not sufficient to give the wife dower. The land must vest in the husband beneficially for his own use, and then if it be so vested, but for a moment, provided the husband be not the mere conduit for passing it, the right of dower attaches."

The seisin is instantaneous, if the title is acquired merely for the purpose of its transmission and without intent to confer a beneficial interest.

The facts found in this case show clearly that it was not the intention of James Gallately to confer upon James C. Plume a beneficial interest in the land conveyed to him, nor did Plume accept such conveyance with the purpose of acquiring a beneficial interest therein for his own use, but, on

the contrary, such conveyance was made and accepted for the purpose of enabling Gallately, through Plume as a mere conduit, to effect a loan and secure it by a mortgage upon said land. This was done, and the title so taken by Plume for such purpose, and in furtherance of it, was reconveyed to Gallately. The deeds and mortgage were made before the same officer, bear the same date, were executed the same day, were delivered for record at the same time, and are parts of a single and entire transaction—are so many successive steps in completion of the loan. The execution of these several instruments constituted a single act in contemplation of law, and this act gave to and conveyed from Plume his title to the land, all of which was done, not with a view of clothing him with an interest for his own use, but for the purpose of enabling Gallately, through him, to procure and secure a loan. This was the character of the seizin. Its purpose precludes a seizin for his own use. Nor does it make any difference how many instruments were made, nor to whom, in execution of such purpose. The result is the same. Many authorities support the proposition, that dower can not be claimed against the mortgagee or vendee of a husband, who took a conveyance in fee and at the same time executed a mortgage or other conveyance, in which the wife did not join, to secure the consideration of such conveyance. 4 Kent Com. 39 ; 1 Washburn Real. Prop. 177 ; *King* v. *Stetson*, 11 Allen, 407 ; *Holbrook* v. *Finney*, 4 Mass. 566 ; *McGowan* v. *Smith*, 44 Barb. 232. All the authorities agree that if the husband is a mere instrument through whom the title is to be passed, such seizin does not entitle the wife to dower.

The facts found bring this case clearly within the rule, unless the time that elapsed in consummating the loan, and the fact that a mortgage intervened the execution of the deeds, take it out of the rule. We are confident that neither does. Whenever a husband is the mere conduit for the

transmission of the title, the time that may be necessary for the execution of such purpose does not affect the character of the seizin. This depends much more upon the purpose of the transaction than upon the duration of time, and, therefore, in this case, the character of the seizin, as indicated by the purpose of the transaction, is not at all affected by the time employed in its execution. Nor does the fact, that a mortgage intervened the execution of these deeds, affect the transitory character of the seizin. These were successive acts, all parts of an entire transaction, and all necessary to accomplish the purpose intended. If the husband is a mere instrument for transferring the title, it is immaterial whether he conveys, in fulfilment of such purpose, to one or many persons, or whether he mortgages to one and conveys the equity of redemption to another, or to the grantor, if such is the purpose. In either case the husband's seizin is instantaneous.

The only case we have found that seems precisely in point is *Hazleton* v. *Lesure*, 9 Allen, 24. In that case, Rufus H. Lesure, being seized in fee of the premises in dispute, in September, 1856, conveyed them to William and Sarah Lesure for life, subject to a mortgage of $800, due Seth Davenport. On the 18th of October, 1860, for the purpose of paying the Davenport mortgage, William and Sarah Lesure conveyed the premises to Rufus H. Lesure, who executed a mortgage upon said premises to the Mechanics' Savings Bank for $800, conveyed the premises back to William and Sarah Lesure for life, and paid the Davenport mortgage. The creditors of Rufus claimed the premises under an attachment issued in October, 1859, against Rufus H. Lesure.

The court say: "If the release or surrender by the tenants for life of their life-estate to Rufus H. Lesure had given him a beneficial seizin for any period of time, however short, in that life-estate, we can have no doubt that it would have become united to the reversion, and neither he nor any sub-

sequent grantee could have asserted a title to it as against his creditors who had previously attached the land. * * * But such was not the fact. The release of the life-estate, the new mortgage to the Mechanics' Savings Bank, the reconveyance of the life-estate, and the discharge of the old mortgage, were all made simultaneously and as parts of one transaction, with the single purpose of giving security to the bank upon this land for the payment of the sum advanced by the bank to pay off the earlier mortgage. The reversioner was merely a conduit through which the estate was passed for this purpose. The release to him gave him no beneficial interest in the life-estate, but only an instantaneous seizin sufficient to enable him to convey it away again at once.

"Whenever a man parts with a freehold estate at the same time, and as part of the same act or transaction by which he acquires it, his seizin for an instant does not subject the estate conveyed to him to the ordinary incidents or incumbrances which would affect it if in him for any time. It makes no difference whether the transaction consists of one conveyance or of several, or whether they are executed between two parties only, or more. If they all constitute one transaction done at the same time, it matters not how complicated it is. If he is but an instrument or conduit to pass the title to another, it is unimportant how many simultaneous conveyances are made into and out of him. In one sense, no doubt, these conveyances operate successively; but it is in such uninterrupted succession as to afford no opportunity to interpose an impediment. Nor does it make any difference whether a party has or has not any other title in the same land, if the seizin acquired by him is formal and instantaneous only. * * * * * The mortgage title passed through the debtor without resting in him, and upon the principles and authorities above stated did not become united to the fee so as to be subject to dower of his wife or to the previous attachment of his cred-

itor. Nor could the simultaneous seizin of the life-estate for the same instant subject that estate to dower or attachment. * * * The application of the doctrine of instantaneous seizin to these cases carries out the manifest intention of all the parties to the transaction in question, * * * and avoids the injustice of depriving the mortgagee and the tenant for life of their estates, without consideration.''

There is no substantial difference between the facts in these cases. It is true that in the above case the money was borrowed to extinguish a prior mortgage upon the same premises ; while in this case it does not appear for what purpose the loan was made. That, however, was immaterial, as the rule of law upon which the case was decided did not, at all, depend upon such circumstance. Aside from it, the facts are analogous, and the decision must be regarded as decisive of the rights of these parties. Besides, the result reached by the application of such rule of law is in consonance with our sense of justice, carries out the manifest intention of the parties, and ought, as we believe, to be applied to the facts found in this case.

This conclusion renders it unnecessary to notice the questions of trusts, so elaborately discussed by both parties.

The court erred in its conclusions of law, and the cause should be reversed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment be, and it is hereby, in all things reversed, at the costs of appellee, with instructions to state conclusions of law in accordance with the foregoing opinion, and to render judgment thereon for the appellants.